IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>**DA RON JEROME COLLINS** | CRIMINAL NO: 7:23-00900-CRI |

**MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION PENDING TRIAL**

The United States of America, by and through its undersigned counsel, has moved this Court for Da Ron Jerome Collins' ("Collins") pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. §§ 3141-3156, specifically § 3142(f)(2)(A) and § 3142(f)(2)(B). The United States respectfully submits the following Memorandum in Support of its Motion for Detention.

**I.      LEGAL STANDARD**

Section 3142(f)(2) of the Bail Reform Act provides that the government may seek detention if, among other things, the government articulates facts demonstrating a serious risk the defendant "will flee" or "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a[ ] prospective witness." 18 U.S.C. § 3142(f)(2).

To determine whether detention is warranted, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).  When "risk of flight" is the basis for detention, the government must only satisfy a preponderance of the evidence standard. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (citing *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir. 1985)).  Detention based on serious risk of obstruction of justice requires proof by clear and convincing evidence. § 3142(f)(2)(B).

### A.     Pretrial Detention § 3142(g) Factors

#### 1.  Nature of the Case and Circumstances of the Offense

On November 14, 2023, a federal grand jury returned a two-count indictment that charges Collins with obstructing a possible violation of 18 U.S.C. § 1201(a), kidnapping, in violation of 18 U.S.C. § 1519, and witness tampering, in violation of 18 U.S.C. § 1512(b)(3).   ECF No. 2. Section 1519, makes it unlawful to knowingly destroy, conceal, cover up any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or in relation to or contemplation of any such matter commits an offense. *United States v. Hassler*, 992 F.3d 243 (4th Cir. 2021).   If convicted, Collins faces a maximum term of imprisonment of 20 years. § 1519.

Section 1512(b)(3) prohibits a person from knowingly . . . engaging in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense.  *United States v. Perry*, 335 F.3d 316 (4th Cir. 2003). The maximum term of imprisonment as to Count 2 is also 20 years. § 1512(b)(3).

2. **Weight of the Evidence**

On Monday, May 15, 2023, from approximately 4:09 p.m. to 4:31 p.m., CLY[1] spoke with a family member as she drove home from work at Spartanburg Regional Hospital. CLY's 2009 white Infinity G-37 was captured by surveillance cameras as she drove towards 5022 Pratt Drive in Boiling Springs, where she lived with Collins since October 2022. CLY and her vehicle were captured by surveillance cameras at about 4:20 p.m. as she drove up to and completed a purchase transaction at an Ace Hardware store on Valley Falls Road in Boiling Springs, South Carolina. According to phone records, at approximately 4:32 p.m., CLY attempted a call to her son's teacher and at 4:39 p.m., CLY again initiated use of her phone to contact the family member. At approximately 4:50 p.m., a neighborhood doorbell camera captured CLY's car as she parked it on the street in front of her Pratt Drive residence. There has been no known contact with or public sighting of CLY since she arrived at the residence.[2] CLY was scheduled to and expected to work the following day, May 16, 2023. On May 16, 2023, CLY did not report to work. Her failure to show for work triggered a request by her family for a welfare check followed by the filing a missing person report with the Spartanburg County Sheriff's Office ("SCSO").

On May 16, 2023, Collins provided a description of Young's vehicle to deputies who were following up on the missing person report. On May 17, 2023, during a meeting with SCSO investigators, Collins stated that when CLY got home at around 5:00 p.m. on May 15, 2023, the two argued, CLY took a shower and left the residence at approximately 6:00 p.m., driving her

---

[1] The disappearance of CLY is still under investigation.

[2] According to phone records, there has been no user-initiated activity on CLY's phone since she arrived at her Pratt Drive home on May 15, 2023.

3

vehicle.³ While denying any knowledge of CLY's whereabouts, Collins suggested that investigators "track the vehicle [CLY's 2009 white Infinity]."

The SCSO put out a BOLO alert ("be on [the] lookout") to other law enforcement agencies for CLY and her car, which included photographs and descriptions of CLY and her 2009 white Infinity bearing SC Tag LCK 688.⁴ Investigators entered the same identifying information in the NCIC (National Crime Information Center) database, in law enforcement license plate recognition platforms, and disseminated the missing person bulletin to media outlets.

On Thursday, May 18, 2023, an anonymous tip led investigators to CLY's vehicle in the parking lot of an apartment complex at 1000 Pinegate Drive, Spartanburg, South Carolina. Surveillance footage from the complex and the surrounding area, shows that on May 15, 2023, an individual who has been identified as Collins (1) drove the vehicle from the direction of his residence to the complex parking lot; (2) backed the vehicle into an end-of-the-row parking space behind a cluster of shrubs, obstructing the view of the license plate; (3) wiped down surfaces inside the vehicle; (4) exited the vehicle wearing gloves and; (5) returned to his Pratt Drive residence on foot. CLY has no known connection to the apartment complex. During a search of the vehicle, investigators recovered a purse containing bank cards issued in CLY's name from the glove

---

³ The Pratt Drive residence was outfitted with interior and exterior security cameras, however, video footage from the residence for the days and times most relevant to the investigation has not been recovered. Collins has provided conflicting explanations as to why the requested video footage is unavailable to investigators.

⁴ Missing persons investigations can be born of suspicious and non-suspicious circumstances. Where the circumstances indicate a strong possibility of foul play, individuals initially thought to be missing or voluntarily absent from their normal life can be victims of kidnapping, murder, or some other criminal act. In addition to being a state crime, kidnapping is also a federal offense under 18 U.S.C. § 1201(a).

compartment. No cell phone was found in the vehicle. The strength of the evidence supports detention.

### 3. History and Characteristics of the Defendant.

Collins, age 48, has no family ties to this district. He has ties to New York, but the geographical distance from this district, combined with the seriousness of the charges against him, increase the risk of non-appearance. Collins was honorably discharged from the United States Army in July 2020. Because his military infractions were disposed of administratively, the Collins has no court-adjudicated criminal convictions. However, he has a significant criminal history. Particularly concerning is Collins' history of violence and threats of violence directed toward those close to him and not, including a girlfriend, an ex-wife and a fellow soldier. One of the domestic incidents described below occurred approximately 17 years ago, however, based on the nature of his prior conduct, his record of violence is not too remote for the Court to consider under the circumstances of this case. *United States v. Quartermaine,* 913 F.2d 910, 917 (11th Cir. 1990) (defendant's acts of domestic violence supported finding of dangerousness where defendant was being prosecuted for an *unrelated* charge). Based on available records, commanders and military police determined that each allegation described below is founded and supported by probable cause.

> **i. Pierce County Sheriff's Office, Parkland, Washington**: On February 24, 2006, at 5:21 p.m., Deputy Centoni was dispatched to the parking lot of a local business in response to a domestic assault report. The deputy arrived at seven minutes later and met with Victim-1 and two witnesses who were waiting to report the incident. As the deputy encountered Victim-1, he observed that she had tears in her eyes and was slightly favoring her neck and back. The left side of her neck appeared a little red and there were slight marks (finger type) on the left side of her throat. Victim-1 completed a domestic violence report in which she reported that she and Collins, who was stationed at Fort Lewis at the time, had been dating off and on for seven (7) years before the incident. Victim-1 and Collins are both were from New York. About one month before this incident, Victim-1 and Collins discussed getting married. At his invitation, on February 18, 2006, Victim-1 traveled from New York to Washington to stay with Collins.

5

Victim-1 reported that on February 23, 2006, Collins told her that he did not want to marry her. Victim-1 suspected that Collins had another girlfriend because he had been distant since her arrival. Collins and Victim-1 began to argue about their relationship in the kitchen of the apartment. Victim-1 reported to the deputy that Collins became angry when she confronted him about cheating on her, grabbed her neck and began choking her which made it hard for her to breath. Collins slammed Victim-1 onto the kitchen counter and then threw her on the floor. Collins' roommates, Witness-1 and Witness-2, both of whom provided statements, observed the argument from an adjacent bedroom.

Witness-1 and Witness-2 heard the victim's screams and a loud "thump" coming from the kitchen, both witnesses came out of the bedroom and saw Collins standing over Victim-1 as she laid on the kitchen floor. On witness physically held Collins back to prevent any further assault, while the other witness pulled her away. Witness-1 stated that as she pulled the victim away, she observed Collins kick Victim-1 in the face. Collins was later arrested for fourth degree domestic violence assault and transported to the jail. The case was dismissed after Collins completed a 2-year diversionary program and paid a fine.

**ii.     Military Police Battalion, Fort Drum, New York:** On April 1, 2015, military police were dispatched to a location in response to a verbal altercation between Collins and Victim-2, another non-commissioned officer (NCO). The investigation determined that Collins threatened to shoot Victim-2 with what appeared to be a firearm camouflaged in a shirt, specifically, Collins angrily told Victim-2, "I'm going to fill you with seven rounds!" Collins invoked his right to remain silent. Collins was charged with communicating a threat, in violation of Article 134 of the Uniform Code of Military Justice ("UCMJ").

**iii.    U.S. Army Garrison Bavaria, Grafenwöhr, Germany:** On July 27, 2018, Victim-3, who was Collins' wife at the time, contacted a military police investigator to report that Collins had assaulted her. Victim-3 told the investigator that Collins "grabbed [me] her by her [my] arms and slammed [me] her against the wall" leaving her arms black and blue, which she kept to herself. Victim-3 also reported that Collins harassed her and violated military protective orders at least three times: in February 2018, on April 21, 2018, and on May 7, 2018. While awaiting approval for an "EROD" (the mechanism for returning civilian or military dependents to travel to the continental United States prior to termination of soldier's overseas tour due to official or personal situations), Victim-3 applied for and received extended protection orders. Collins was charged with assault consummated by battery, in violation of UCMJ Article 128b.

Even though the infractions were not adjudicated in criminal court and did not result in criminal convictions, the conduct involved the communication of threats, domestic violence and assault by strangulation, all of which are relevant and proper for this Court to consider. *See United States v. Smith*, 160 F. Supp. 3d 280, 284 (D.D.C. 2016); *United States v. Douglas*, 535

F. Supp. 2d 118, 120 (D.D.C. 2008); *see also United States v. Norris*, 188 Fed. Appx. 822, 830 (11th Cir. 2006).   This factor weighs in favor of detention.

### 4. Nature and Seriousness of the Danger to Any Person or the Community

The final factor requires the Court to weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. 3142(g)(4). To justify detention based on dangerousness, the government must prove dangerousness by clear and convincing evidence. *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005). Collins has also proven to be a continuing danger to CLY and presents a serious risk of danger to those close to him and not.

> **Spartanburg County Sheriff's Office, South Carolina**: On Saturday, May 13, 2023, at approximately 10:27 p.m., a relative of Collins' made an anonymous 911 call to report a domestic incident between Collins and his girlfriend [CLY] at their Pratt Drive residence.   The 911 caller stated, "there was a lot going on in the house . . . an assault or domestic abuse" . . . that Collins and his girlfriend were in the house and . . . "it sounds like somebody is choking. . . I just need you guys get here fast." See GX 1.[5]
>
> When SCSO deputies arrived, CLY told them that after she told Collins she wanted to end their relationship, Collins got angry and threw her clothes about the residence, choked her, dragged her down the stairs, through the living room and out the front door. Investigators observed and photographed faint red marks on CLY's neck and chest and a a bruised elbow, which CLY stated was caused by Collins' dragging her about the house.[6] *See GX 2*.   Collins admitted to the responding officer that he threw CLY's clothes out of the house but denied choking CLY.   He stated that he tackled CLY to prevent her from throwing an object through a back window. CLY stated she did not want to file charges. See GX2 Bodycam at 00:46-15:35. No charges were filed.   CLY has been missing since May 15, 2023. No home security video footage has been recovered.

In opposition to this motion, Collins is likely to rely on his service and experience in the military.

---

[5]  A copy of each exhibit will be provided to the Court and defense counsel ahead of the detention hearing.

[6] "Choking" is often used to refer to "strangulation."   However, strangulation occurs when pressure is applied [by another person] from the outside, cutting off airflow and/or blood vessels in the neck, preventing oxygen from reaching the brain.

7

That line of thinking fails to recognize that, given his history of violence, his experience and training, particularly in using firearms to kill, is precisely what makes the danger he poses so formidable. Assaulting a domestic partner and violating a court order designed to protect the victim are serious issues that impact the safety of the domestic partner and the community. *See, e.g.*, *United States v. Gray*, No. 22-CR-20258, 2022 WL 4379583 (S.D. Fla. September 22, 2022) (finding history and characteristics factor weighed in favor of detention where the defendant's criminal history, including incidents of domestic violence involving his girlfriend and two additional more recent arrests in 2020 and 2021 for battery involving another woman); *United States v. Zavalza-Sanchez*, No. CR20-0092-JCC, 2021 U.S. Dist. LEXIS 96255, at *5 (W.D. Wash. May 20, 2021) (finding defendant's history and characteristics factor weighed against release where the defendant had been convicted of disorderly conduct, domestic violence, violating two no-contact orders, and had multiple warrants issued against him for failing to appear). This factor weighs in favor of detention.

**II.     The Court should find by a preponderance of the evidence that there is a risk that Collins will fail to appear for future proceedings and abide by the Court's directives.**

The Defendant has no family ties to this district. He faces potential conviction on two felony offenses that each carry a maximum sentence of 20 years imprisonment. The evidence against Collins is strong enough for him to believe that there is a reasonable chance he will be convicted, and the realities of federal prosecution may serve as motivation to flee. The concern is not only that he will up and leave the district; his conduct on pretrial supervision thus far should also raise serious doubts that he will conform to his obligations and respect the Court's orders.

On June 1, 2023, the United States Marshal Service Fugitive Task Force arrested Collins on outstanding warrants from the Spartanburg County General Sessions Court for grand larceny,

8

in violation of South Carolina Code § 16-13-30 (2019) and obstruction of justice, in violation of § 16-9-340 (2022), each of which carry a maximum sentence of 10 years imprisonment. On June 6, 2023, a magistrate set bond at $9,000 with home detention and GPS location monitoring.[7] Under the bond order, Collins was also prohibited from possessing a firearm and leaving the state without the court's permission. On or about June 29, 2023, Collins' bond was revoked when police found a loaded AR-15 rifle with additional magazines, various ammunition, a Kevlar vest, an armored helmet, and other tactical gear in the house he was living temporarily.[8] On September 20, 2023, Collins' bond was reinstated but modified to remove the conditions of home detention and GPS monitoring. On or about September 24, 2023, Collins traveled to Virginia without permission from the court.[9] On October 11, 2023, after a bond revocation hearing, Collins' bond was modified to reinstate GPS monitoring. As the Court is aware, any electronic monitoring bracelet can be removed. Collins' criminal history; his failure to comply with the state bond order; his history of non-compliance with military protection orders and his obstructive conduct is evidence he is unlikely to comply with bond conditions imposed by this Court.

**III.   Clear and convincing evidence shows the Defendant's release poses a serious risk that he will obstruct or attempt to obstruct justice, attempt to, or threaten, injure, or intimidate, prospective witnesses.**

The Defendant is not obligated to incriminate himself. However, the law does not allow him to obstruct a law enforcement investigation. In plotting to manipulate and obstruct the

---

[7] Much of the evidence referenced herein, including Collins' history of domestic violence was not considered by the magistrate at the time of the bond hearing in state court.

[8] On May 19, 2023, during the execution of a search warrant, police seized an assault rifle, .357 Magnum handgun and a .22 caliber rifle from Collins' residence.

[9] One of Collins' family members notified the SCSO that Collins had traveled out of state to Virginia.

investigation into the whereabouts of his missing girlfriend, Collins has proven to be a dangerous person who appears to have no qualms about planning criminal acts and taking steps to protect himself or others from being associated with the crimes afterwards. The risk that Collins will continue to engage in the same or similar obstructive behavior that led to his indictment justifies pretrial detention. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (citing danger that the defendant would continue to engage in drug trafficking, the same crime charged in the indictment). As evidenced by the following communications initiated by Collins from the detention center, there is a serious risk that he will seek to influence potential witnesses and tamper with evidence as these are identified through the discovery process. A review of telephone calls and electronic communications referenced below show the severity of Collins' disdain and unwarranted anger towards a relative he knows to be cooperating in the investigation.

**RE: Bro**

Reference #: 170,879,154
From: DARON COLLINS (Inmate: 494537)
To: R. Woods (Public: rwoods750)
Sent: 08/25/2023 10:29 PM
Status: Recipient Read
Flagged: [1] Found 'police' in message.

Bro they raided Jennifer's house today, your niece is talking with police thats how they know everything. They knew about my suitcase with my clothes, my computer and also when it arrived.

His stated desire to *"punch her [his relative] over the fucking phone"* and proclaiming that . . . *"if I were there, I would punch her right in her fucking throat"* constitutes clear evidence of the risk Collins' release poses to anyone who crosses him, including prospective witnesses. See GX3; GX4 at 03:10-03:20; 04:48-05:05.

Collins' conduct *while in custody* shows that no conditions of release will prevent his harassment and threats of violence toward prospective witnesses. The government has met its

burden by proving by clear and convincing evidence that no set of conditions could reasonably mitigate the threat he poses to prospective witnesses, the integrity of the justice system or reasonably assure the community's safety.

## IV.     CONCLUSION

An analysis of the § 3142(g) factors weighs in favor of Collins' detention. No set of conditions will reasonably assure his appearance as required; mitigate the threat he poses to victims, prospective witnesses, the integrity of the ongoing investigation nor assure the safety of other persons and the community. §§ 3142(f)(2)(A), (f)(2)(B).  Collins should be detained pending trial.

           Respectfully submitted,

           ADAIR F. BOROUGHS
           UNITED STATES ATTORNEY

By:    */s/ Leesa Washington*
        LEESA WASHINGTON (Fed ID 06973)
        Assistant United States Attorney
        55 Beattie Place, Ste. 700
        Greenville, SC 29601
        Telephone 864-282-2100
        Email: Leesa.Washington@usdoj.gov

November 17, 2023