IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DA RON JEROME COLLINS | CRIMINAL NO: 7:23-00900-TMC |

**GOVERNMENT'S RESPONSE TO COURT ORDER FOR BRIEFING PURSUANT TO FED. R. CRIM. P. 11(f)**

Comes now the United States of America, by and through its undersigned counsel, and responds to the Court's briefing order. ECF No. 95. In November 2023, a federal grand jury returned a two-count indictment charging the defendant with obstruction of justice, in violation of 18 U.S.C. § 1519 (Count 1) and witness tampering, in violation of 18 U.S.C. § 1512(b)(3) (Count 2). The defendant pled guilty to each count and, in doing so, he admitted the truth of the charges alleged in the indictment. The defendant has not moved to withdraw his pleas. Prior to sentencing, the Government moved for an upward variance under 18 U.S.C. § 3553(a). During the contested sentencing hearing, the Court questioned whether § 1519 and § 1512(b)(3) cover the defendant's conduct and whether there is a sufficient factual basis to support the defendant's guilty pleas. For the reasons stated herein, there is a sufficient factual basis to support the defendant's pleas.

BACKGROUND

On the evening of May 15, 2023, Casey Young disappeared from the residence she shared with the defendant in Boiling Springs, South Carolina. The next morning, her employer requested a welfare check, and her family filed a missing person report. The Spartanburg County Sheriff's Office ("Sheriff's Office") initiated an investigation. In two separate interviews with state investigators, the defendant provided conflicting stories regarding the functioning of his home security camera and the reason why he could not provide video footage for the day of Young's

disappearance. The defendant's claim that his driveway camera, positioned to capture movements [his and Young's] known to have occurred within the frame of the camera, was accidentally unplugged, is belied by the ADT records, the admitted factual basis proffered at the plea and the uncontested sentencing testimony of Agent Heather Cox-McClain. *United States v. Carr*, 271 F.3d 172, 179 (4th Cir. 2001) citing, (*United States v. DeFusco,* 949 F.2d 114, 117 (4th Cir. 1991) (It is also settled that the judge may establish the factual basis for a guilty plea through questioning in open court, documents, or other evidence in the record.)

Young arrived home from work around 5:00 p.m. on May 15 and, according to the defendant, she left about an hour later in her car. On May 18, 2023, investigators found Young's car abandoned in an apartment complex parking lot three miles away from their residence. Contrary to his statements to investigators, video surveillance cameras identified the defendant as the person who, on May 15 at approximately 7:34 p.m., dumped Young's car in the parking lot. Knowing that on the evening she disappeared he abandoned Young's car, the defendant told investigators that Young drove off in her car. Knowing that she would not be found with her car, he led investigators to believe that if they "tracked" her car [as opposed to her phone], they would likely find Young. In the trunk of the car, investigators found identifying documents, including Young's checkbook and credit cards.

The evidence also shows that at and around the time of Young's disappearance, the defendant manipulated the placement and use of his phone to conceal his true location. Young's phone, which the evidence shows was in use before and after she arrived home, has not been found. Examining cell phone location data for Young and for the defendant was required to help determine whether she was voluntarily missing or whether she was the victim of an abduction or

a kidnapping. The evidence is sufficient to meet each element of each offense to which the defendant pled guilty.[1]

## I. Count 1— Obstruction of Justice

The statute provides in pertinent part:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be [guilty of a crime].

18 U.S.C. § 1519.

Count 1 reads:

> That between on or about May 13, 2023 and on or about May 15, 2023, in the District of South Carolina, the Defendant, DA RON JEROME COLLINS, did knowingly alter, destroy, mutilate and conceal a record, document and tangible object, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, to wit: kidnapping, a possible violation of Title 18, United States Code, Section 1201(a), a matter within the jurisdiction of the United States Department of Justice, a department and agency of the United States, in relation to and in contemplation of such matter; in violation of Title 18, United States Code, Section 1519.

Indictment at 1, ECF No. 2.

### A. Elements

To prove obstruction of justice, the Government must show (1) the defendant altered, destroyed or concealed a record, document, or tangible object, (2) the defendant did so knowingly,

---

[1] If, after consideration of the relevant caselaw and the uncontested facts, the Court finds the record does set forth a factual basis sufficient to support the defendant's guilty plea pursuant to Fed. R. Crim. P. 11(f), the Government respectfully moves to reopen the Rule 11 proceedings to allow for further development of the record as to the factual basis for each offense.

and (3) the defendant intended to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States. *United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012) (additional holding superseded by regulation).

### B. Factual Basis

(1)   the defendant altered, destroyed and concealed a record, document, or tangible object;[2]

The factual basis proffered by the Government at the guilty plea hearing (*Guilty Plea*, ECF No. 96, Tr. 25:1-14) and the sentencing exhibits and testimony (Transcript, ECF No. 100) and evidence produced in discovery provide the following factual basis for this element. ADT produced 452 thirty-second video clips created by the defendant's home security system and the activity log (GX35_ADT Records) covering May 13-20, 2023. The system included (1) interior and exterior door sensors, (2) a front doorbell camera, (3) a driveway camera, and (4) a backdoor camera. *Cox-McClain Testimony,* Tr. 179:14–180:22. The system was set to record 30-second video clips which remain recoverable on their servers until the size limit has been reached. *Id.* at 180:23–181:13. At no time relevant to this investigation did the defendant's account reach its size limit. *Id.* The defendant controlled the placement of cameras and sensors, including the configuration of video analytics rules to control when and what motion or activity triggers a camera to record. *Id.* at 181:7-20; *Guilty Plea,* Tr. 25:9-13. The system was accessible from a computer or mobile phone, however, the defendant accessed and controlled his ADT account via a mobile app on his cell phone to receive alerts by email or push notifications of recordings captured by his cameras, to pause or temporarily disable the recording feature and to delete recorded clips. *Id.* at

---

[2] "Tangible object" in § 1519 includes objects that can be used to record or preserve information. *Yates v. United States,* 135 S.Ct. 1074, 1079 (2015).

181:10-13; *see also* GX35. Once a customer deletes a video, it is not recoverable from ADT servers. *Guilty Plea,* Tr. 25:13-14; GX35.

Even though activity within the frame of the defendant's driveway camera around the time Young disappeared [5:00 p.m. on May 15] was captured by his neighbors' security cameras, no video footage produced by the defendant's camera was found on ADT servers. *Id*. at 25:17-20; 26:5-9; GX7 (Young 4:51 p.m. arrival), GX17 (defendant 5:24 p.m. rummaging in truck of Young's car). The defendant told police that any footage recorded by his driveway camera during the relevant period—the evening of May 15—was unavailable because the driveway camera was accidentally unplugged from the outlet. GX6 (Robinson BWC) Timestamp 05:25-05:50; GX10 (Collins Interview) Timestamp 26:00-27:15. However, the ADT activity log (GX35) shows the only power failure caused a four-minute service interruption from 11:44 a.m. to 11:48 a.m. on May 14. *Cox-McClain Testimony,* Tr. 181:21-182:5. The ADT log (GX35) shows no power failure and no service interruption on May 15-16. *Id*. at 185:19-22.

The ADT records show the driveway camera was operable throughout the day except for periods when the defendant temporarily paused or disabled the recording feature on his cameras. *Id*. at 182:25-183:21. Between 4:34 a.m. and about 4:00 p.m. on May 15, the activity log (GX35) shows that the driveway camera was triggered to record 22 times. *Id*. at 182:6-24. From 12:12 p.m. to 2:34 p.m., the camera was triggered to record 12 times and 11 of the 12 video clips were recovered by ADT. *Id*. The recovery of the 11 video clips shows that even if the camera was unplugged, previously recorded clips were recoverable, which is consistent with the ADT records and Agent Cox McClain's testimony that video clips recorded but not found on ADT servers were deleted. *Id*. at 185:23-186:7-12; GX35.

5

The ADT activity log shows that the defendant left his residence at approximately 7:20 p.m. to 8:21 p.m., to drive to the apartment complex, dump Young's car, walk back home and enter the house. GX12; *Federico Testimony,* Tr. 49:22-54:15; *Cox-McClain Testimony,* Tr. 184:6-185:21. Even though the defendant's movements occurred within the frame of his driveway camera, the log shows the camera was not triggered to record which indicates the recording feature was paused. *Id.* at 185:8-18.

The defendant abandoned Young's car in a parking lot three miles away from their residence. He backed the car into an end-of-the-row parking space next to a cluster of mature shrubs, obscuring the car and its license plate (GXa-c) which identified the vehicle's registered owner. *Federico Testimony,* Tr. 47:19-25. Inside the trunk, investigators found documents, including checkbook in Young's name (GX14i), a credit card in her name and medication in a container bearing a label that identified the name and address of Young's mother (GX14f).

To hide his true location, the defendant manipulated the placement and use of his phone. First, he left his phone at home while he drove to dump Young's car. *McGraw Testimony,* Tr. 66:13-22. By doing so, he created a record of his phone's location to conceal his own whereabouts. Second, a forensic examination of the defendant's cell phone shows that on May 16 from approximately 2:17 a.m. to 2:51 a.m., while he was driving around in Spartanburg, Laurens and Greenville counties, the defendant powered his phone off for approximately thirty-three minutes. *McGraw Testimony,* Tr. 68:12-70:17. Turning a cell phone off effectively disables its ability to record location information. *Id.* at 69:21-23.

This evidence is sufficient to show (1) the defendant destroyed home security video recordings, (2) attempted to conceal and did conceal Young's car and its contents, and (3) altered and attempted to conceal records of his whereabouts by manipulating the location and usage of his

phone, all of which establishes that the defendant altered, destroyed and concealed a record, document, or tangible object as required by the first element of Count 1.[3]

    (2)    <u>the defendant did so knowingly;</u>

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. Evidence of the defendant's words, acts, or omissions, along with all the other evidence can be considered in deciding whether the defendant acted knowingly. *See United States v. Underwood,* 95 F.4th 877, 889 (4th Cir. 2024) (citing *United States v. Lanham*, 617 F.3d 873, 887 (6th Cir. 2010)). The term "knowingly" in § 1519 modifies only the surrounding verbs: alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry. 18 U.S.C. § 1519. The term "knowingly" does not extend to each and every clause of the statute. *See United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) ("This statute rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with intent to impede or influence a federal investigation.")

As to the video recordings, the defendant's own words, "my cameras are always on, and I see everything," show that he solely controlled the security cameras, was aware of their functions and controlled the cameras' operation. GX6 (Robinson BWC) Timestamp 11:10-11:22; GX6 (Robinson BWC) Timestamp 05:25-05:50 (Q: So, since it was off, there'd be no saved … images? A: Correct); ECF No. 96 at 25:1-6. While a customer has access to security cameras via computer or phone, ADT records show the defendant accessed and operated his cameras using his cell phone.

---

[3] Section 1519 contains numerous clauses that set forth various ways in which the statute can be violated. Fed.R.Crim.P. 7(c) expressly permits the joining of two or more acts, each of which would constitute an offense standing alone, in a single count to allege that an offense was committed by "one or more specified means" without offending the doctrine of duplicity. *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018). A single count alleging multiple acts is not duplicitous if the acts are part of a continuing course of conduct. *Id.*

GX35, ADT Records; GX30 (Iniesha Collins Interview) Timestamp 37:45-38:42 (Q: You know how many cameras are at the house? A: Um, I know, I think, I think, I think the doorbell is a camera. I know there's one on top of the garage. I know there's one in front of their door …Q: Do uh, do you know how he monitors them? A: No, no. Q: Is it on the TV or is it on his phone, or … A: I think, oh, they're on the phone…on the phone.) Sufficient evidence exists to prove the defendant knowingly destroyed video recordings and prevented the camera from recording to conceal her arrival and his own at and around the time of Young's disappearance.

The defendant cannot dispute that he knowingly left his residence to drive Young's car and its contents three miles and dump it in the apartment complex parking lot. *See* GX 12 (Windsor Palms Surveillance Video). He cannot credibly deny that he left his cell phone at home while he dumped the car in an attempt to conceal his whereabouts. Knowing that his phone's location data would show that it (*and he*) never left the house, he told investigators, *"I spent the evening throwing her belongings into the garage…"* and that *"I did not leave the house."* GX10 (Collins Interview) Timestamp 28:25-28:40, 69:21-23. A rational factfinder could also find the defendant powered his cell phone off during his after-midnight drive to disable its ability to record location information. The evidence is sufficient to meet the knowledge element of Count 1.

    (3)    <u>the defendant intended to impede, obstruct, or influence the investigation or proper administration of a matter within the jurisdiction of any department or agency of the United States</u>.

The uncontested evidence of the defendant's security system activity, his control of the system and the actions he took to prevent and delete video clips relevant to the investigation; the uncontested evidence that the defendant left his home to dump Young's car and its contents three miles away from the residence; and the extent of his actions (including the manipulation of his cell phone's location records) to hide his whereabouts as set forth above is sufficient to show he

8

attempted to and did destroy and conceal a record, and he did so with the intent to impede, obstruct, or influence a kidnapping investigation.

The defendant has admitted that he was aware of his wrongdoing and that an investigation of some kind was at least a possible outcome of his actions. If he was not, there would be no reason for his conduct. His awareness of his wrongdoing influenced his subsequent false statements and attempts to mislead investigators regarding (1) the reasons for the unavailability of relevant recordings, (2) the whereabouts of Young's car and its contents, and (3) his own whereabouts relevant to the underlying offense by manipulating his cell phone location and usage. The nature of the defendant's actions in the context of a missing person or kidnapping investigation is sufficient evidence of his intent to hinder or influence an investigation.

Section 1519 does not require the Government to prove the defendant acted with the specific intent to impede and obstruct a federal investigation—as opposed to a state or local investigation—that was ongoing, imminent, or the defendant contemplated would occur. *Yates v. United States*, 574 U.S. 528, 547 (2015) ("[Section 1519] covers conduct intended to impede any federal investigation or proceeding, including one not even on the verge of commencement."); *United States v. Hassler*, 992 F.3d 243, 245 (4th Cir. 2021) (collecting cases) ("The Government was not required to prove that Hassler knew or contemplated that the investigation he intended to impede was within the jurisdiction of a federal agency."). It is sufficient that the "matter" at issue was ultimately proven to be within the federal government's jurisdiction. *United States v. Cooper*, 482 F.3d 658, 664–65 (4th Cir. 2007) ("It is well settled that *mens rea* requirements typically do not extend to the jurisdictional elements of a crime—that 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'").

9

The plain language in § 1519 supports a broad interpretation of the terms "investigation" and "matter," sufficient to cover the defendant's conduct. *See Hunt*, 526 F.3d 739, 744. Imposing a requirement that the *matter* develop into a criminal charge on the subject of the investigation ignores the plain meaning of the statute.[4] *See* 18 U.S.C. § 1519. Kidnapping is a federal crime.[5] 18 U.S.C. § 1201. A kidnapping investigation as alleged in Count 1 is within the jurisdiction of the Department of Justice, a department of the United States. The U.S. Attorney's Office, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and the Federal Bureau of Investigation (FBI), are agencies within the United States Department of Justice and all clearly have jurisdiction to investigate the offense and matters related to the offense. There is more than an adequate record to find a sufficient factual basis for the defendant's plea to Count 1.

## II.     Count 2 — Witness Tampering

The statute provides in pertinent part:

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--
>
> > (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense … shall be [guilty of a crime].

Title 18 U.S.C. § 1512(b)(3).

---

[4] The Senate Judiciary Committee's report makes clear that Section 1519 is "meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and *less formal government inquiries, regardless of their title*." S. Rep. No. 107-146, 14-15 (2002) (emphasis added). In other words, the report indicates that Section 1519 does not draw a distinction between a formal proceeding and a less formal government inquiry. *See id.* ("Section 1519 is meant to apply broadly . . . . The intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct *any* government function.") (emphasis added).

[5] Federal jurisdiction extends to interstate *and* to intrastate kidnapping, if the offender travels in or uses instrumentalities of interstate commerce, such as vehicles, cell phones and the banking system, in committing or in furtherance of the commission of the offense. § 1201(a).

Count 2 reads:

> That on or about May 17, 2023, in the District of South Carolina, the Defendant, DA RON JEROME COLLINS, knowingly engaged in misleading conduct towards another person with the intent to hinder, delay, and prevent the communication to a law enforcement officer and a judge of the United States of information relating to the commission and possible commission of a federal offense, that is, the Defendant, DA RON JEROME COLLINS, knowingly and intentionally misled investigators of the Spartanburg County Sheriff's Office investigating the possible kidnapping of his dating and intimate partner, CLY, by providing a false and misleading account of his observations and contact with CLY on May 15, 2023. Specifically, the Defendant, DA RON JEROME COLLINS, falsely claimed that CLY transported herself away from the residence located at 5022 Pratt Drive in Boiling Springs, South Carolina, in her 2009 white Infinity automobile on May 15, 2023, the day she disappeared, when in truth and in fact, the Defendant, DA RON JEROME COLLINS, retained possession of the 2009 white Infinity automobile on May 15, 2023, after CLY disappeared, until he abandoned the automobile in a location away from his residence; in violation of Title 18, United States Code, § 1512(b)(3).

Indictment at 2, ECF No. 2.

### A. Elements

To prove a violation of § 1512(b)(3), the Government must prove the defendant: (1) knowingly and corruptly engaged in misleading conduct toward another person (2) with the intent to hinder, delay or prevent the communication of truthful information to a federal law enforcement official or judge and (3) such truthful information related to the commission or possible commission of a federal offense. Where the conduct intended to prevent communication with law enforcement officers generally, that intent includes federal officers where the Government shows a reasonable likelihood that, had such communication been made, at least one relevant communication would have been made to a federal officer. *Fowler v. United States*, 563 U.S. 668, 671-78 (2011).

### B. Factual Basis

(1) <u>the defendant knowingly and corruptly engaged in misleading conduct toward another person;</u>

The "misleading conduct" that the statute prohibits includes both "knowingly making a false statement" to another person and "intentionally omitting information from a statement thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement." 18 U.S.C. § 1515(a)(3)(A)-(B).

On May 16-17, Sheriff's Office investigators interviewed Collins twice at his home. During each interview, the defendant falsely stated that Young arrived home around 5:00 p.m. on May 15 and that she left the residence about an hour later driving her car. GX6 (Robinson BWC) Timestamp 02:45-03:26. The defendant has admitted that he falsely stated that he did not leave the residence the evening Young disappeared; he did leave the residence twice that evening. *Guilty Plea,* Tr. 22:17-23; GX10 (Collins Interview) Timestamp 28:25-28:40; GX12. He left to dump Young's car, and he left the residence again seemingly to drive around aimlessly after midnight to locations in Woodruff, Gray Court and Greenville. GX 12 (Windsor Palms Surveillance Video); *Special Agent Matthew Wilde Testimony,* Tr. 214:7-216:20. And, even though he knew that he had dumped Young's car in a parking lot three miles away from their residence and that she was, therefore, separated from her car, the defendant gave investigators a description of Young's car when he stated, "… *so my question is there anyway ya'll can just track the vehicle to find where she's at?"* GX10 (Collins Interview) Timestamp 03:56-04:01. The defendant's statements clearly communicated to investigators that Young left in her vehicle and that finding her car increased the likelihood of finding her. The evidence is sufficient to find that the defendant knowingly misled investigators about both the circumstances of Young's disappearance and his own whereabouts in that he falsely claimed he did not leave the house the evening she disappeared.

    (2)  <u>the defendant intended to hinder, delay or prevent the communication of truthful information to a federal law enforcement official;</u>[6]

By providing information he knew to be false and misleading to Spartanburg County investigators, the defendant clearly intended to prevent, hinder and delay the communication of truthful information concerning Young's disappearance. It is irrelevant whether, at the time of the defendant's obstruction, investigators or the defendant believed the case was being or might be investigated as a federal crime or that investigators might pass information on to federal officials. *See Federico Testimony,* Tr. 153:15-23 (discussion regarding timing of federal involvement). It is sufficient that the defendant intended to influence an investigation that later turned out to be federal. *See United States v. Perry*, 335 F.3d 316, 320–22 n.9 (4th Cir. 2003) ("Nothing in § 1512(b)(3) suggests that the recipient of the deceptive information must be involved in an ongoing federal investigation, or in an investigation of a federal crime.") As noted in *Fowler*, "the application of the statute is relatively clear" when, unlike in this case, a defendant engages in misleading conduct with a particular federal law enforcement officer in mind. 563 U.S. 668, 671. Section 1512's reach, however, is not limited to those instances. *Id.* The *Fowler* Court rejected a reading of § 1512 that requires the defendant to act with federal law enforcement in mind and recognized, "any such limitation would conflict with the statute's basic purpose," because witness tampering "may prove more serious (and more effective)" when the crime takes place "at a time when the precise communication and nature of the officer who may receive it are not yet known." *Id.*

---

[6] The term "law enforcement official" is defined, in pertinent part, as "an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant," who is "authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense." 18 U.S.C. § 1515(a)(4).

To satisfy the intent element under *Fowler*, the Government is only required to show that "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id*. at 676-78; *see also United States v. Smith,* 723 F.3d 510, 518 (4th Cir. 2013) (finding the "relatively low bar" set by *Fowler* to prove likelihood of communication to federal officer in 18 U.S.C. § 1512(a) prosecution met where the victim complained of gang activity and drug trafficking, and evidence showed that the DEA worked closely with the city police and that the police were its biggest source of information and referrals). "The Government need not show that such communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Fowler*, 563 U.S. at 678; *see also United States v. Ramos-Cruz*, 667 F.3d 487, 496 (4th Cir. 2012) (applying *Fowler*).

The evidence in this case is sufficient to meet the *Fowler* standard. Immediately after Young disappeared, her family and her employer contacted the Sheriff's Office. Her family, her employer and the defendant made it clear to investigators that her sudden disappearance was out of character for Young. The defendant, who lived with and had dated Young for two years, detailed for investigators her near future plans and her serious obligations and responsibilities. GX10 (Collins Interview) Timestamp 4:49-4:59 ("That same night, when she left, umm, my daughter, which I didn't know, I had no clue about this until it actually happened. Apparently, Casey was supposed to pick my daughter up that night from work, but she didn't show up."); Timestamp 12:30-12:48 ("We were supposed to have been going to New Orleans this Memorial Day…you know, we've got tickets to go to New Orleans, but that's cancelled now…"); Timestamp 29:17-29:25 ("So I don't want to say she's anti-social, but she's normally more of a… she's more of a homebody… if she's not here, she's with her family"); Timestamp 34:08-34:30 ("I know her…her children is her priority she is …this is unusual for her to not reach out to her children…this is not

normal…I'm just…this is not normal…I would just like her to show proof of life, that she's okay.") Ironically, these types of statements from the *defendant* increased the possibility of foul play. And against the backdrop of what appeared to be genuine care and concern, the defendant's misleading statements and conduct escalated what began as a missing person investigation to a possible kidnapping. When the circumstances of a missing person investigation indicate foul play, individuals thought to be voluntarily absent from their normal life can be victims of kidnapping or some other criminal act. *Guilty Plea,* Tr. 23:23-24:4. Kidnapping under 18 U.S.C. § 1201(a) is a federal offense. *Id*. Had his deception gone undetected, the defendant may have successfully hindered the Sheriff's Office communication with federal officials regarding a possible federal crime—the exact conduct § 1512(b)(3) was passed to address. *See Perry*, 335 F.3d at 321 n.8.

Tracking Young's movements was necessary to find her and determine whether she had been abducted or was voluntarily missing. *Federico Testimony,* Tr. 85:4-7. At least as early as May 23, 2023, the Sheriff's Office contacted Special Agent Wilde, who leads the FBI's Cellular Analysis Survey Team ("CAST") for assistance. *Guilty Plea,* Tr. 23:21-23. Under extensive cross examination, Investigator Federico confirmed the Sheriff's Office communication with federal officials. *Federico Testimony,* Tr. 108:2-8 (Q: You got the phone—what I call the ping report, trying to discern where her phone was when it was turned on, where it wasn't, the location, and all of those things? A: Yes, sir. Q: that involved bringing in the FBI, didn't it? A: Yes, sir.); Tr. 113:7-13 (Q: Well, you were communicating with other people in law enforcement I would assume? A: I do. Q: I would think that you probably communicated with the U.S. Attorney's office about this case a pretty good bit, haven't you? A: Yes, sir.); Tr. 196:4-13 (Q: How do you know Matt Wilde was involved in the investigation before the U.S. Attorney's office? A: Because he helps us on some phone stuff with other cases too. I am more familiar with Matt Wilde [than the U.S.

15

Attorney's office]). Of the 160 trials in which Agent Wilde testified, 123 of them arose out of investigations initiated by state and local law enforcement.[7] Curriculum Vitae, ECF No. 81-1 at 4-6. Between June 2022 and February 2025, ten of those cases were investigated by state and local police in this district. *Id*. Agent Wilde, a former investigator with the Sheriff's Office, is responsible for crisis response and regularly coordinates and consults on violent crime and other cases with other federal agencies as well as state and local agencies. *Wilde Testimony,* Tr. 197:23-25 (Q: Typically[,] what type of cases do you work on? A: Violent crime cases is most of what I work on, but then I work some white collar … and some other random things.); Tr. 199:17-21 (Q: What type of agencies generally request assistance from the CAST team? A: Really any law enforcement agency can request assistance from our team, so we work with most state and local and other federal agencies …); Tr. 201:7-16 (Q: I want to start with discussing your role in this case, how exactly did you become involved? A: I was contacted by the Spartanburg County Sheriff's Office, I believe, May-- about May 23rd, May 24th of 2023 . . . I was asked to look at the victim's records and Mr. Collins' records and conduct an analysis of the locations that those records--where those phones were during, I believe, May 14 and 15). Young's cell phone was not recovered so the Sheriff's Office directed Agent Wilde to locations it deemed relevant to finding her and her phone's location. *Wilde Testimony,* Tr. 210:21-23 (Q: …how were you able to determine the important or relevant addresses in this case? A: the addresses were provided to me by the Spartanburg County Sheriff's Office that were relevant in the case.).

---

[7] Agent Wilde's case list does not include ongoing investigations or cases that did not result in a trial in state court or federal court, nor investigations in which other CAST members coordinated with state and local law enforcement agencies.

16

The FBI became involved in the investigation within about 10 days of Young's disappearance. And at least by September 2023, the Sheriff's Office provided their investigative file and referred the case to ATF Agent Heather Cox-McClain and the U.S. Attorney's Office for possible federal prosecution.[8] *Cox-McClain Testimony,* Tr. 190:24-25. Additional investigative steps, including the issuance of grand jury subpoenas for records, were taken.

Even post-*Fowler*, there is no requirement that federal authorities actually receive the misleading information under § 1512(b)(3). The statute itself applies to one who engages in misleading conduct with an *intent* to "hinder, delay, or prevent" communication with federal law enforcement officers. It does not require that the individual have succeeded. *See Perry*, 335 F.3d 316, 322, n.9. So the fact that the Sheriff's Office did communicate with federal law enforcement and that a federal investigation did commence is additional appropriate evidence that the federal nexus under the *Fowler* standard was exceeded in this case.

In similar cases, courts have inferred a "reasonable likelihood" from the federal nature of a crime plus "additional appropriate evidence," including proof of close cooperation between state and federal law enforcement. *See Smith*, 723 F.3d 510, 518; *Ramos-Cruz*, 667 F3.2 487, 497 (in prosecution for § 1512(a)(1)(C), where the obstructive conduct was aiding and abetting witness tampering by murder and alien in possession of firearm, uncontested evidence regarding the formation and focus of a federal and local gang task force and local police officer's exchanging

---

[8] If the Rule 11 proceeding is reopened, the Government expects Spartanburg County investigators will testify that the Sheriff's Office works closely with federal authorities. The Sheriff's Office frequently shared investigatory information with federal officials, particularly Agents Wilde and Cox-McClain. Therefore, not only was communication relevant to the circumstances of Young's disappearance reasonably likely, but it also actually occurred in this case. Testimony suggesting that information-sharing between the Sheriff's Office and federal authorities was commonplace makes it likely that the defendant's statements to state investigators would reach federal law enforcement.

information about her investigation with ATF and the U.S. Attorney's office during investigation of a murder, was sufficient to conclude the likelihood that, had murder victim communicated with authorities, at least one relevant communication would have been to a federal law enforcement officer); *see also Perry*, 335 F.3d 316, 321 & n.8 ("evidence that . . . [the defendant's] file was referred to the U.S. and [federal law enforcement] for possible federal prosecution[,]" and evidence showing that state authorities "regularly communicate[] with federal authorities regarding possible federal offenses); *United States v. Johnson*, 874 F.3d at 1083 (9th Cir. 2018) (Evidence that federal officers were in contact with their state counterparts, had investigated similar incidents, or had established policies and practices of investigating can support a *Fowler* reasonable likelihood finding "without much difficulty".)

The working relationship between the Sheriff's Office and federal law enforcement, particularly the agents involved in this case, shows there is sufficient evidence to meet this standard. As the *Fowler* Court helpfully remarked, a defendant who engages in misleading conduct to prevent effective communication "with law enforcement officers in general" does not act to "prevent communicat[ion] with Lithuanian law enforcement officers, for there is no reasonable likelihood that any Lithuanian officers would become involved." 563 U.S. at 678. But here, the defendant's false and misleading statements to investigators about the circumstances of Young's disappearance increased the likelihood, in a state where federal and state law enforcement work closely together on a regular basis, that the Sheriff's Office would communicate with federal officials. The evidence, taken together, shows that it was significantly more than "remote, outlandish, or simply hypothetical" that information regarding Young's disappearance would reach federal law enforcement, and it satisfies the third element of this count. *Fowler*, 563 U.S. at 678.

> (3) the information related to the commission or possible commission of a federal offense.

To satisfy the final element of § 1512(b)(3), the Government must prove that the truthful information a defendant intended to conceal related to the commission or possible commission of a federal offense. Because the statute explicitly refers to the *possible* commission of a federal offense, the Government need not prove that any person was actually guilty of any underlying federal offense. *United States v. Cobb*, 905 F.2d 784, 790 (4th Cir. 1990) ("Section 1512(b)(3) makes criminal the knowing use or attempted use of corrupt means to hinder the communication of information 'relating to the commission or *possible* commission of a Federal offense.' Thus, the plain language of the statute makes clear that, as a general rule, proof of an actual commission of a federal offense is not a necessary prerequisite to, or an essential element of, the crime of obstruction of justice.").

Information concerning the circumstances of Young's disappearance, including when and where she was last seen, her mode of transportation, and the defendant's whereabouts around the time she was last seen are all related to the possible commission of federal kidnapping. Thus, the evidence provides a sufficient factual basis to support the defendant's guilty plea to Count 2.

The defendant has admitted his guilt as to both offenses and has not moved to withdraw his guilty pleas. Evidence produced in discovery, admitted in the Rule 11 proceeding and introduced at sentencing overwhelmingly establishes his guilt of each element of each offense.

[SIGNATURE PAGE FOLLOWS]

        Respectfully submitted,

        BRYAN P. STIRLING
        UNITED STATES ATTORNEY

BY: */s/Leesa Washington*
     LEESA WASHINGTON (FED ID 06973)
     Assistant United States Attorney
     55 Beattie Place, Suite 700
     Greenville, South Carolina 29601
     Telephone: (864) 282-2100
     Email: Leesa.Washington@usdoj.gov

July 7, 2025